IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BENNIE D. GRAVES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-0894 |
| | ) | District Judge Joy Flowers Conti |
| JEFFREY A. BEARD, PH.D., | ) | Magistrate Judge Cynthia Reed Eddy |
| Secretary, Pa. Department of Corrections, | ) | |
| et. al., | ) | |
| | ) | |
| Respondents. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the reasons set forth below, I recommend that petitioner Bennie D. Graves' Motion

Pursuant to Fed.R.Civ.P. 60(b)(5) and (6) for Relief from Final Judgment Denying Equitable

Tolling (ECF No. 23) be denied.

### II.    REPORT

#### A.  The Previous Report and Recommendation (ECF No. 7)

The background facts and procedural history of this case were summarized by United

States Magistrate Judge (now District Judge) Cathy Bissoon in her July 19, 2010 Report and

Recommendation (ECF No. 7) to dismiss Bennie D. Graves' Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody ("Habeas Petition") (ECF No. 3):

> Petitioner was found guilty by a jury of First Degree Murder and
> Third Degree Murder on January 31, 1980, in the Court of Common Pleas of
> Allegheny County, Pennsylvania, in the brutal strangulation deaths of Lloyd
> Weston, Jr., and Lynette Weston. Petitioner initially was sentenced to death,
> but that sentence was vacated and he was sentenced to life imprisonment on
> December 23, 1980, as well as a consecutive term of 10 to 20 years
> imprisonment.

> Petitioner's conviction and sentence were affirmed on direct appeal by the Superior Court of Pennsylvania in an opinion dated February 8, 1983. *Commonwealth v. Graves*, 456 A.2d 561 (Pa. Super. 1983). Petitioner did not seek leave to appeal to the Supreme Court of Pennsylvania, but instead filed a collateral appeal pursuant to Pennsylvania's Post Conviction Hearing Act ("PCHA"), 42 Pa.C.S.A. § 9541, *et seq.*, on April 28, 1983. The PCHA petition was denied after a hearing, and no appeal was filed (Doc. 3, pp. 4, 6).
>
> Petitioner took no further action until November, 1994, when he filed a petition pursuant to the renamed Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq*. This petition was denied in 1997, and no appeal was filed (Doc. 3, pp. 4, 6).
>
> Finally, Petitioner filed another PCRA petition on March 4, 2008. This last petition was dismissed as untimely on April 9, 2008, and the Superior Court of Pennsylvania affirmed the denial of relief in an opinion dated July 16, 2009 (Doc. 3. Pp. 48-50).
>
> Petitioner filed this petition pursuant to 28 U.S.C. § 2254 on July 6, 2010, and raises claims that were presented during his state court collateral appeals. The undersigned has directed service of the petition, but now recommends that it be dismissed without waiting for an answer.

Magistrate Judge Bissoon Report and Recommendation (ECF No. 7), at 1-2.

In his Habeas Petition, Mr. Graves averred that his convictions "were obtained by the use of false/perjured testimony by Commonwealth professional witnesses, the introduction of illegally obtained evidence and the fabrication of physical evidence by the Commonwealth . . . ." Habeas Petition (ECF No. 3) at 15. Additionally, to explain "why the one-year statute of limitations . . . does not bar [his] petition," petitioner asserted a "miscarriage of justice and evidence of actual innocence." Habeas Petition (ECF No. 3) at 13, ¶ 18, Timeliness of Petition. More specifically, Mr. Graves argued that "extrinsic fraud is not barred by the statute of limitations" where the trial and post-conviction court and counsels' deficiencies prevented petitioner from meaningful appeal or collateral review, kept "an innocent man in prison," and where the "prosecution and subsequent conviction . . . were a knowing and deliberate

miscarriage of justice and petitioner should be entitled to have the evidence of innocence reviewed by an unbiased Court of jurisdiction." *Id.*, at 13-14, ¶ 18.

Because it was filed beyond the one year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, 28 U.S.C. §§ 2244(d)(1), Magistrate Judge Bissoon rejected petitioner's arguments for excusing his untimeliness, explaining:

> A one-year statute of limitations applies to habeas corpus petitions challenging state sentences. 28 U.S.C. §2244(d). To determine whether Graves's petition was timely filed, the Court must first determine the date direct review concluded and the judgment became "final." See 28 U.S.C. § 2244(d)(1)(A). Second, the Court must determine whether any "properly filed" applications for collateral relief tolled the limitations period. See 28 U.S.C. § 2244(d)(2). Finally, the Court must determine whether another statutory exception or equitable tolling is applicable.

> Petitioner's conviction became final on March 8, 1983 . . . . Because Graves's conviction became final prior to the enactment of the applicable statute of limitations, the limitations period is deemed to have commenced on April 24, 1996, giving him until April 24, 1997 to file a federal habeas petition. . . . Therefore, Graves's conviction became final more than 27 years before he filed this petition in July, 2010, and the petition was filed more than 13 years after the statute of limitations expired.

> Next, the Court must determine whether Graves is entitled to any available "tolling" provisions. *See* 28 U.S.C. § 2244(d)(2). The first such tolling that could possibly apply occurred when Graves's PCRA proceeding, filed in 1994, was still pending when the statute of limitations commenced on April 24, 1996. However, Petitioner concedes that this PCRA proceeding was dismissed sometime in 1997, and he did not appeal. Therefore, any tolling of the limitations period ceased in 1997, and the limitations period ran unabated until Petitioner again attempted a state court collateral appeal in 2008. Therefore, the statute of limitations expired, at the latest, sometime in 1998, and an additional 10 years of time expired before Petitioner again attempted a state court appeal. The statute of limitations expired long before Petitioner filed his petition.[1]

> > [FN 1] Graves's 2008 PCRA proceeding was filed at a time when the statute of limitations had already expired, making it unnecessary for the Court to address the possible tolling implications of that proceeding. It should be noted, however,

that only "properly filed" PCRA petitions toll the limitations period, and Graves's 2008 PCRA petition was dismissed as untimely by the state courts. Therefore, the 2008 PCRA petition would not have tolled the limitations period even if that period had not already expired. *See, Pace v. DiGuglielmo*, 544 U.S. 408, 414, *reh'g denied*, 545 U.S. 1135 (2005) (A finding that a post conviction petition is untimely under state law ends the inquiry for purposes of 28 U.S.C. § 2244(d)(2)).

Finally, *the one-year limitation period in §2244(d) is a statute of limitations, not a jurisdictional bar, and may be equitably tolled. Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient." *Id.* at 618-19 (internal citations, quotations, and punctuation omitted). A review of the record does not disclose any extraordinary circumstances beyond Graves's control that account for his failure to file his habeas petition in a timely manner. Petitioner argues at one point that he was the victim of "extrinsic fraud" because he now believes that the trial court deliberately appointed incompetent counsel during his direct appeal and his first two collateral appeals (Doc. 3, p. 13). As noted above, Petitioner's direct appeal concluded in 1983, and his second collateral appeal concluded in 1998. Even if, as Petitioner alleges, PCHA and PCRA counsel rendered ineffective assistance, this would not in any way have prevented Petitioner from filing a timely federal habeas corpus petition. *Petitioner was free to investigate and raise any claims he believed he had at all times since his direct appeal concluded in 1983. There is no basis for granting Petitioner any period of equitable tolling in this case*, and there certainly is no justification for Petitioner to wait nearly three decades after his conviction became final to seek federal habeas review.

Report and Recommendation (ECF No. 7), at 3-5 (certain citations omitted; emphasis added).

The Magistrate Judge declined to recommend a certificate of appealability because "[j]urists of reason would not find it debatable that Graves failed to file his habeas petition within the one year limitations period." *Id*., at 5 (citing *Slack v. McDonald*, 529 U.S. 473 (2000)).

**B. Objections to Report and Recommendation to District Judge**

Petitioner filed Objections to the Report and Recommendation on September 2, 2010. (ECF No. 12). In his Objections, petitioner vigorously asserted that federal courts may and should excuse a procedural default, such as the expiration of a statute of limitations, where the petitioner demonstrates that a fundamental miscarriage of justice will occur if the federal court does not hear his claim, such as when the petitioner demonstrates he is actually innocent. *Id*. at 1 Petitioner states that "'[t]he miscarriage of justice exception applies only in extraordinary cases where a constitution[al] violation has probably resulted in the conviction of one who is actually innocent.' *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2639 (1986).”). *Id*.

Petitioner argued that the Magistrate Judge overlooked or disregarded the numerous exhibits attached to his Habeas Petition which, he claimed, clearly showed that "each piece of evidence presented by the Commonwealth, at trial, was manufactured by star and professional witness, Jean Chelan, who was then employed by the Allegheny County Crime Lab," and constituted proof that "there existed physical and biological evidence of someone other than petitioner who committed the murders and which evidence was illegally suppressed and/or covered up by the Commonwealth." *Id*. at 2. Petitioner's Objections also detailed a string of lawyers that had represented him ineffectively in the Pennsylvania proceedings, which prevented the exonerating evidence from being properly presented to the state courts. *Id*. at 3-9. Petitioner does not claim that any of this evidence was newly discovered; in fact, he maintains that he brought it to the attention of his trial counsel who refused to bring the evidence to the trial court's attention in post-verdict motions in 1983-84. *Id*. at 9-10; Habeas Petition (ECF No. 3), at 3, ¶ 11.

United States District Judge (now Chief Judge) Joy Flowers Conti denied petitioner's Objections on January 14, 2011 and adopted the Report and Recommendation. Memorandum Order (ECF No. 16). In her Memorandum Order, Judge Conti noted that the "bar of the statute of limitations is applicable here and the objections did not show a basis for equitable tolling. Petitioner was also granted two extensions of time to file additional objections, but ultimately failed to do so." *Id*. at 1.

### C. Application for Certificate of Appealability to Court of Appeals

Thereafter, petitioner filed a Notice of Appeal and an Application for a Certificate of Appealability ("COA") with the United States Court of Appeals for the Third Circuit, at Case Number 11-1408. (ECF No. 18). In his Application for a COA, petitioner again relied upon the exhibits he had presented in his Habeas Petition as proof that his conviction had been obtained by false and fabricated evidence, perjury and illegal suppression of exonerating evidence, and ineffectiveness of all counsel, in support of his argument that the District Court had erred in dismissing his Habeas Petition on procedural grounds without specifically addressing his claim of miscarriage of justice and actual innocence, and in denying him an evidentiary hearing. Application for COA, at 1-2, 7, Court of Appeals Case Number 11-1408, at 003110479892. Petitioner argued that neither the Magistrate Judge nor the District Judge had considered his claim of miscarriage of justice/ actual innocence as grounds for excusing his procedural default. *Id*., at 6.

According to petitioner, the evidence/ proof he submitted with his Habeas Petition showing the use of illegally obtained evidence against him, false and perjured testimony, fabricated physical evidence and ineffective assistance of counsel at all levels, put the District Court on notice that a claim of actual innocence and manifest injustice was being asserted to

excuse his procedural default. *Id* at 8-9. In the face of that proof, petitioner asserted, "jurists of reason" could not disagree that the District Court erred in finding he had procedurally defaulted the claims raised in his Habeas Petition because they were untimely under the AEDPA statute of limitations. *Id*. at 7, 9-10.

The Court of Appeals disagreed. In its Order denying the COA, the Court stated:

> Appellant [petitioner] has not shown that "jurists of reason would find it debatable whether the district court was correct" in ruling that Appellant's petition filed pursuant to 28 U.S.C. § 2254 was untimely filed. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *Despite his arguments to the contrary, he has not shown that he is entitled to equitable tolling of the limitations period of 28 U.S.C. § 2244(d)(1). See Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 2562 (2010); *Miller v. New Jersey State Dep't of Corr*., 145 F.3d 616, 618-19 (3d Cir. 1998).

Order dated July 1, 2011, at Case Number 11-1408. Doc. 003110582271 (emphasis added).

Petitioner then filed a Petition for Rehearing with the Court of Appeals. Doc. 00310693259. In it, he reiterated his argument that fabricated and perjured evidence, suppression of exonerating evidence, and the ineffective assistance of all counsel, presented a compelling claim of actual innocence constituting extraordinary circumstances excusing his procedural default and untimeliness, and that it would be a fundamental miscarriage of justice not to address his claims of actual innocence. On November 8, 2011, the Court disagreed, and denied the Petition for Rehearing. Order, Doc. 00310711915.

**D. Motion Pursuant to Fed.R.Civ.P. 60(b)(5) and (6) (ECF No. 23)**

**1. Grounds Presented**

On June 10, 2014, Mr. Graves filed a "Motion Pursuant to Federal Rule of Civil Procedure 60(b)(5) and 60(b)(6) for Relief from Final Judgment Denying Equitable Tolling in 28 U.S.C. Section 2254 Habeas Corpus Petition that Asserted Miscarriage of Justice Actual innocence Claim and Dismissing Petition as Untimely Under . . . (AEDPA) One Year Statute of

Limitations of 1996." (ECF No. 23) (hereafter, "Rule 60(b) Motion"). The Rule 60(b) Motion

relies on *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924 (2013), a United States Supreme

Court decision decided on May 28, 2013. *McQuiggan* held that a petitioner may file an

otherwise untimely federal habeas petition upon a convincing showing that he or she committed

no crime, finding that "actual innocence, if proved, serves as a gateway through which a

petitioner may pass," even when AEDPA's statute of limitations has expired. *Id*. at 1928.

Rule 60(b) provides that, on motion and just terms, "the court may relieve a party or its

legal representative from a final judgment, order, or proceeding for the following reasons"

including the two relied upon by Mr. Graves: "(5) the judgment has been satisfied, released or

discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed.R.Civ.P.

60(b)(5), (6).[1] Rule 60 further provides that a "motion under Rule 60(b) *must be made within a*

*reasonable time* -- and for reasons (1), (2), and (3) no more than a year after the entry of the

judgment or order or the date of the proceeding." Fed.R.Civ.P. 60(c)(1), Timing (emphasis

added).

The Court notes that while petitioner's Rule 60(b) Motion purports to raise a (b)(5)

ground for relief in addition to the "any other reason" catch-all provision of (b)(6), he makes no

attempt to demonstrate the manner in which his "judgment has been satisfied, released or

discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it

prospectively is no longer equitable." This Court's examination of the record, motion and

response indicates that a (b)(5) ground for relief is rather a *non sequitur* in the context of

---

[1] The others are "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void." Fed.R.Civ.P. 60(b)(1-4).

petitioner's case. Only the catch-all ground for relief set forth in Rule 60(b)(6), "any other reason," is raised and briefed in petitioner's Rule 60(b) Motion, and it is the only ground this Court need discuss.

The crux of petitioner's Rule 60(b) Motion is summarized as follows:

> Petitioner Graves moves the instant court to reopen his 2010 habeas corpus matter, dismissed by the Honorable Joy Flowers Conti on January 14, 2011 as being untimely pursuant to [AEDPA's] statute of limitations . . . . The instant motion to reopen is being brought pursuant to the recent ruling by the United States Supreme Court in the case of *McQuiggan v. Perkins*, 569 U.S. ___, 133 S.Ct. ___, 185 L.Ed.2d 1019 (2013) and errors committed by U.S. Magistrate Judge Bissoon, in her report and recommendation and the instant court, the Honorable U.S. District Judge, Joy Flowers Conti, in her memorandum order of 1/14/2011. . . .

> * * *

> Petitioner Graves . . . moves this Honorable Court consistent with *McQuiggan* . . . and the rudimentary demands of justice, that "federal constitutional errors do not result in the incarceration of innocent persons," to revisit Graves' 2010 federal habeas petition, acknowledge the miscarriages of justice/ actual innocence claim and proffered evidence of Graves' absolute innocence and order that Graves be afforded a full and fair evidentiary hearing on miscarriage of justice/ actual innocence in order to determine whether or not the proffered evidence is sufficient to show a "convincing claim of actual innocence" in order for Graves overcome the AEDPA's one year statute of limitations and have his constitutional claim of ineffective assistance of trial Counsel, prosecutorial misconduct and 4th Amendment violation heard. Where, as to the later, Graves was never afforded an opportunity to final litigation.

Rule 60(b) Motion (ECF No. 23), at 11, 17-18. The "errors" petitioner ascribes to the Magistrate and District Judges is their failure to recognize that his actual innocence/ miscarriage of justice claim entitles him to equitable tolling and excuses his lack of diligence in bringing his actual innocence claims to federal court some 27 years after his conviction. *Id*. at 14.

## 2. Not "Second or Successive" Habeas Petition

Respondents initially argue that Mr. Graves' Rule 60(b) Motion is a "second or successive" habeas petition under section 2244 and, as such, this Court cannot entertain the motion unless the Court of Appeals for the Third Circuit grants a COA. Under AEDPA's "second or successive petition" rule, a prisoner is not permitted to file a petition seeking habeas corpus relief attacking a judgment of conviction and/or sentence after his previously filed habeas petition based on the same conviction was decided on the merits. 28 U.S.C. § 2244(b)(1) (a "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed").

When a Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion is treated as a successive habeas petition. *Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004). If the petitioner makes a new claim in a second or successive petition, he must first receive permission to file the petition from the court of appeals. *Burton v. Stewart,* 549 U.S. 147, 157 (2007). Absent such threshold authorization, the district court is not permitted to consider the merits of the subsequent petition. 28 U.S.C. § 2244(b)(3)(A); *Gonzalez v. Crosby*, 545 U.S. 524, 529–30 (2005); *Robinson v. Johnson*, 313 F.3d 128, 139–40 (3d Cir. 2002).

Thus, if petitioner's Rule 60(b) Motion directly or by implication challenged his state court convictions or sentence, this Court could not entertain such motion until the Court of Appeals for the Third Circuit granted a COA. However, petitioner is challenging the procedural default/ statute of limitations ruling of the district court, not a ruling on the merits of the habeas petition. Therefore, this Rule 60(b) Motion is not a second or successive petition barred from the district court's consideration in the absence of a COA. *Gonzalez*, 545 U.S. at 535-36 ("Because petitioner's Rule 60(b) motion challenges only the District Court's previous ruling on the AEDPA

statute of limitations, it is not the equivalent of a successive habeas petition. The Eleventh Circuit therefore erred in holding that petitioner did not qualify even to seek Rule 60(b) relief."); *Pridgen*, 380 F.3d at 727 (in "those instances in which the factual predicate of a petitioner's Rule 60( b) motion attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction, the Rule 60( b) motion may be adjudicated on the merits."); *United States v. Andrews*, 463 F.App'x 169, 172 and n.2 (3d Cir. 2012) (in a federal habeas case, Court of Appeals "conclude[d] that the District Court erred in treating the 60(b) motion as a second or successive habeas petition. We recognize that a Rule 60(b) motion such as this one, which requests that the statute of limitations for a prior petition be equitably tolled for 'actual innocence,' may require an indirect assessment of the merits of the petitioner's underlying arguments. However, *Gonzalez* . . . and *Pridgen* . . . do not indicate that we should treat such a motion as the equivalent of an attack on the merits.").

### 3. Rule 60(b) Motion Is Not Timely

As noted, a "motion under Rule 60(b) must be made within a reasonable time. Fed.R.Civ.P. 60(c)(1). While Rule 60(c) does not explicitly provide a one year period of limitations for bringing a 60(b)(6) claim, Court of Appeals' precedent is clear that Rule 60(b)(6) "may not be used as a catchall to avoid the one-year limitation." *Gambocz v. Ellmyer*, 438 F.2d 915, 917 (3d Cir.1971). Accordingly, a Rule 60(b)(6) motion filed more than a year after final judgment is generally considered untimely unless "extraordinary circumstances" excuse the party's failure to proceed sooner. *Gordon v. Monoson*, 239 F. App'x 710, 713 (3d Cir. 2007) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)).

"[W]hat is a reasonable time must depend to a large extent upon the particular circumstances alleged." *Lasky v. Continental Prod. Corp*., 804 F.2d 250, 255 (3d Cir. 1986).

(citing *Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir. 1959). A court considers many factors, including finality, the reason for delay, the practical ability for the litigant to learn of the grounds relied upon earlier, and potential prejudice to other parties." *In re: Diet Drugs*, 383 F. App'x 242, 246 (3d Cir. 2010) (citing *Kagan v. Caterpillar Tractor Co*., 795 F.2d 601, 610 (7th Cir. 1986) and *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)). As the Court of Appeals explained in the *Diet Drugs* case, what constitutes a "reasonable time" also "depends on which Rule 60(b) clause a claimant is trying to avail. We have noted that relief under Rule 60(b)(6) is extraordinary because it can be given for 'any other reason justifying relief' and is not subject to an explicit time limit. *Coltec Indus. Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002). Therefore, a claimant must establish exceptional circumstances justifying the delay for filing under Rule 60(b)(6)." *In re: Diet Drugs*, 383 F. App'x at 246.

Mr. Graves filed his Rule 60(b) Motion on June 10, 2014, about three and one half years after this Court's judgment on January 14, 2011 (affirmed by the Court of Appeals for the Third Circuit on November 8, 2011). Moreover, he filed it more than a year after the *McQuiggan* decision was handed down on May 28, 2013. Petitioner offers no explanation, let alone any exceptional circumstances, for the one year delay between the United States Supreme Court decision upon which he relies and his Rule 60(b) Motion in this Court seeking to reopen his Habeas Petition. Given his previous history of delays, as outlined in Magistrate Judge Bissoon's Report and Recommendation and above, it would have behooved Mr. Graves to offer some reasons to explain this latest delay of more than one year, which to put it in perspective, exceeds AEDPA's one year statute of limitations period as measured from the date of the *McQuiggan* decision, and, by way of comparison, the one year time period built for raising claims under subsections (b)(1), (2) and (3). Fed.R.Civ.P. 60(b) (1), (2) and (3).

In *Ortiz v. Pierce,* 2014 WL 3909138 (D.Del. 2014), the petitioner argued that *Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012), constituted an intervening change in the law that amounts to an extraordinary circumstance justifying relief under Rule 60(b)(6). The District Court for the District of Delaware found the Rule 60(b)(6) motion untimely under Fed.R.Civ.P. 60(c)(1), stating: "the Third Circuit recently opined that a Rule 60(b)(6) motion for reconsideration based on *Martinez*[2] will fail unless it 'was brought within a reasonable time of that decision.' *Cox v. Horn*, —— F. 3d ——, 2014 WL 3865836, at * 1 ( 3d Cir. Aug. 7, 2014). The instant Rule 60(b)(6) Motion was filed . . . approximately one year and eleven months after the issuance of the *Martinez* decision . . . . Although the Third Circuit did not define what constitutes a reasonable time for filing a Rule 60(b)(6) motion premised on *Martinez* the Court concludes that waiting almost two full years after *Martinez* to file the instant Motion does not satisfy the 'reasonable time' requirement.").

Under all of the circumstances, petitioner's Rule 60(b) Motion is untimely under Fed.R.Civ.P. 60(c)(1). *See also Reed v. Pierce*, 2014 WL 3919656, *2 (D.Del. 2014) (Rule 60(b)(6) Motion filed approximately one year and seven months after the issuance of *Martinez* decision was untimely); *Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987) (Rule 60(b) motion brought almost two years after order at issue was untimely); *Dietsch v. United States*, 2 F.Supp.2d 627, 633 (D.N.J. 1998) (same).

### 4. *McQuiggan v. Perkins*

Giving the *pro se* petitioner the benefit of the doubt, and out of an abundance of caution, the Court assumes arguendo that Mr. Graves' Rule 60(b) Motion was filed within a reasonable time of the district court's initial judgment and the *McQuiggan* decision. Nevertheless,

---

[2] In *Martinez v. Ryan,* 132 S.Ct. 1309, 1320 (2012), the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding *may* establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.

*McQuiggin v. Perkins* does not provide automatic entry through AEDPA's statute of limitations gateway every time a petitioner asserts "actual innocence" or "miscarriage of justice."

"Relief under Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances." *Morris v. Horn*, 187 F.3d 333, 341 (3d Cir. 1999) (quoting *Reform Party v. Allegheny Co. Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999). As previously noted, the *McQuiggin* case held that actual innocence constitutes an equitable exception that may overcome a procedural bar, including expiration of the statute of limitations, so that a federal habeas court may adjudicate a federal habeas petition on the merits. *McQuiggan* stated:

> This case concerns the "actual innocence" gateway to federal habeas review applied in *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, if the petitioner does not file her federal habeas petition, at the latest, within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," § 2244(d)(1)(D), can the time bar be overcome by a convincing showing that she committed no crime?

> We hold that *actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar*, as it was in *Schlup* and *House*, *or, as in this case, expiration of the statute of limitations*. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] *petitioner does not meet the threshold requirement unless* he persuades the district court that, *in light of the new evidence*, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S.Ct. 851; *see House*, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "*the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup*, 513 U.S., at 332, 115 S.Ct. 851.

*McQuiggan*, ___ U.S. ___, 133 S.Ct. 1924, 1928 (2013) (emphasis added).

5. **The Intervening Decision in *McQuiggan v. Perkins* Does Not Present the Requisite Extraordinary Circumstances to Obtain Relief Under Rule 60(b)(6)**

Petitioner offers no *new* evidence of actual innocence. As he states in his Habeas Petition, petitioner has known about, and apparently had in his possession, the exhibits attached to his Habeas Petition since the trial and initial post-trial motions in state court in 1983. Habeas Petition (ECF No. 3), at 3, ¶ 11(a); Rule 60(b) Motion (ECF No. 23), at 9-10. The only thing "new" is an intervening (i.e., between this Court's initial judgment denying his Habeas Petition as untimely and his Rule 60(b) Motion) United States Supreme Court decision, *McQuiggan v. Perkins*.

Although *Gonzalez* allowed the petitioner to present a Rule 60(b) motion challenging denial of a habeas petition under section 2254 on procedural grounds without first seeking and obtaining a COA from the Court of Appeals, the Supreme Court affirmed the denial of Mr. Gonzalez' Rule 60(b) motion. The Court held that Mr. Gonzalez could not avail himself of an intervening change in the Supreme Court's interpretation of the AEDPA statute of limitations in *Artuz v. Bennett*, 531 U.S. 4 (2000) (state post-conviction relief petition can toll the federal statute of limitations even if the petition is ultimately dismissed as procedurally barred), stating:

> Petitioner's only ground for reopening the judgment denying his first federal habeas petition is that our decision in *Artuz* showed the error of the District Court's statute-of-limitations ruling. We assume for present purposes that the District Court's ruling was incorrect. As we noted above, however, *relief under Rule 60(b)(6)* -the only subsection petitioner invokes- *requires a showing of "extraordinary circumstances." Petitioner contends that Artuz's change in the interpretation of the AEDPA statute of limitations meets this description. We do not agree*. The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of 28 U.S.C. § 2244(d)(2). *It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation*. Although our constructions of federal statutes customarily apply to all cases then pending on direct review, *see, e.g., Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), *not every interpretation of the federal statutes setting forth the requirements*

> *for habeas provides cause for reopening cases long since final.* If *Artuz* justified reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of § 2244(d)(2), then *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), would justify reopening long-ago grants of habeas relief based on a lower court's unduly generous interpretation of the same tolling provision.
>
>            \* \* \*
>
>     . . . [P]etitioner's Rule 60(b)(6) motion fails to set forth an "extraordinary circumstance" justifying relief.

*Gonzalez*, 545 U.S. at 536-37, 538 (footnotes omitted; emphasis added).

### 6. Extraordinary Circumstances Under *Cox v. Horn* Analysis

District courts within the Third Circuit considering whether *McQuiggan* presented extraordinary circumstances sufficient to warrant relief from a judgment pursuant to a Rule 60(b)(6) motion uniformly have held it does not. *See, e.g.*, *Ferguson v. Diguglielmo,* 2014 WL 3871217, \*3 (W.D.Pa. 2014) ("Third Circuit denied Petitioner's application [for a COA] because *McQuiggin* did not announce a new rule of constitutional law and because Petitioner presented no newly discovered evidence of actual innocence."); *Williams v. Patrick*, 2014 WL 2452049, \*6-\*7 (E.D.Pa. 2014) (noting intervening developments in the law "rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)," district court finds that "*McQuiggin* does not constitute extraordinary circumstances justifying Rule 60(b)(6) relief.") (citing *Agostini v. Felton*, 521 U.S. 203, 239 (1997)); *Rethage v. Attorney General of Pennsylvania*, 2014 WL 1572407, \*3-\*4 (W.D.Pa. 2014) (motion under subsection (b)(6) must be brought "within a reasonable time," Fed.R.Civ.P. 60(c)(1), and requires a showing of "extraordinary circumstances;  "The Court's research did not yield a case in which a petitioner has actually been permitted to reopen a judgment under Rule 60(b)(6) based solely on the change in law brought about by *McQuiggin v. Perkins* . . .") (collecting cases).

However, these decisions preceded the August 7, 2014 decision of the Court of Appeals for the Third Circuit in *Cox v. Horn*, ___ F.3d ___, 2014 WL 3865836 (3d Cir. 2014), which refined and clarified the appropriate analysis for determining whether an intervening change in law presents extraordinary circumstances sufficient to warrant relief from the denial of a section 2254 habeas petition pursuant to Rule 60(b). In *Cox,* the Court of Appeals held that the jurisprudential change rendered by *Martinez v. Ryan*, which permitted post-conviction counsel's failure to raise ineffective assistance of trial counsel claims to excuse procedural default of those claims did not entitle the habeas petitioner to relief from final judgment dismissing his petition. Three months after the *Martinez* decision, Cox filed a motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure for relief from the 2004 order dismissing his habeas petition.

The District Court denied the motion, finding that the intervening change in law occasioned by Martinez, "without more," did not provide cause for relief. The Court of Appeals for the Third Circuit agreed in part, and offered the following guidance:

> [F]or relief to be granted under Rule 60(b)(6), "*more*" *than the concededly important change of law wrought by Martinez is required—indeed, much "more" is required*. Ultimately, *as with any motion for 60(b)(6) relief, what must be shown are "extraordinary circumstances* where, without such relief, an extreme and unexpected hardship would occur." *Sawka v. Healtheast, Inc*., 989 F.2d 138, 140 (3d Cir. 1993) . . . . But what those extraordinary circumstances would -- or could -- be in the context of *Martinez* was neither offered to the District Court by the parties nor discussed by the Court, although, to be sure, at that point there had been little post-*Martinez* case law to inform any such discussion.
>
> We will vacate the order of the District Court and remand to provide the Court the opportunity to consider Cox's Rule 60(b)(6) motion with the benefit of whatever guidance it may glean from this Opinion and from any additional briefing it may order. We note at the outset that one of the critical factors in the equitable and case-dependent nature of the 60(b)(6) analysis on which we now embark is whether the 60(b)(6) motion under review was brought within a reasonable time of the *Martinez* decision. See Fed.R.Civ.P. 60(c)(1). It is not disputed that the timing of the 60(b)(6) motion before us— filed, as it was, roughly ninety days after *Martinez* -- is close enough to that

decision to be deemed reasonable. Still, though not an issue before us, it is important that we acknowledge -- and, indeed, we warn -- that, unless a petitioner's motion for 60(b)(6) relief based on Martinez was brought within a reasonable time of that decision, the motion will fail.

*Cox*, 2014 WL 3865836, at *1 (some citations omitted; emphasis added).

*Cox* instructs district courts to "employ the full, case-specific analysis . . . when faced with a 60(b)(6) motion . . . ." *Id*. at *6. Although intervening developments in the law by themselves "*rarely* constitute the extraordinary circumstances required for relief under Rule 60(b)(6)," *id*. at *7 (quoting *Agostini*, 521 U.S. at 239), the Court of Appeals has not "embraced any categorical rule" and recognizes that "rarely" is not "never." *Id*. Instead,

we have long employed a flexible, multifactor approach to Rule 60(b)(6) motions, including those built upon a post-judgment change in the law, that takes into account all the particulars of a movant's case. . . . The fundamental point of 60(b) is that it provides "a grand reservoir of equitable power to do justice in a particular case." . . . *A movant, of course, bears the burden of establishing entitlement to such equitable relief, which, again, will be granted only under extraordinary circumstances*. . . . But a district court must consider the full measure of any properly presented facts and circumstances attendant to the movant's request.

*Id*. at *8 (citations omitted; emphasis added).

Thus, while the Court did "not adopt a per se rule that a change in decisional law, even in the habeas context, is inadequate, either standing alone or in tandem with other factors, to invoke relief from a final judgment under 60(b)(6)," it agreed with the District Court that "jurisprudential change rendered by *Martinez*, without more, does not entitle a habeas petitioner to Rule 60(b)(6) relief" and that a "post-judgment change in the law on constitutional grounds is not, perforce, a reason to reopen a final judgment." *Id*. at *9-*10. Some of the other non-exclusive factors at play in the flexible, multi-faceted *Cox* analysis, the "more" in the

determination whether a change in law warrants Rule 60(b) relief, were stated by the Court as follows:

-i- Did the change in law announce a new constitutional rule or right, or did it affect some equitable change in habeas procedural law? "Much less does an equitable change in procedural law, even one in service of vindicating a constitutional right, demand a grant of 60(b)(6) relief." *Id*. at *10.

-ii- The "merits of a petitioner's underlying ineffective assistance of counsel claim can affect whether relief based on" the change in law is warranted, and when Rule "60(b)(6) is the vehicle through which [the intervening change in law] is to be given effect, the claim may well need be particularly substantial to militate in favor of equitable relief." *Id*.

-iii- Courts "must heed the Supreme Court's observation . . . that Rule 60(b)(6) relief in the habeas context, especially based on a change in federal procedural law, will be rare." *Id*. (citing *Gonzalez*, 545 U.S. at 535–36 & n. 9).

-iv- "Principles of finality and comity . . . dictate that federal courts pay ample respect to states' criminal judgments and weigh against disturbing those judgments via 60(b) motions. In that vein, a district court reviewing a habeas petitioner's 60(b)(6) motion may consider whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago." *Id*. The considerations of "repose and finality become stronger the longer a decision has been settled." *Id*.

-v- A movant's "diligence in pursuing review" of his claims "is also an important factor." *Id*. at *11.

### E.  Application to Petitioner Graves' Rule 60(b) Motion

Heeding the Supreme Court's observation that "Rule 60(b)(6) relief in the habeas context," especially where the motion relies upon "a change in federal procedural law, will be rare," *Cox*, 2014 WL 3865836, at *10, this Court finds that petitioner's is not that rare case.

Like *Martinez*, *McQuiggan* did not announce a sudden shift or radical departure from existing constitutional law, but marked another step in the evolution of the actual innocence/ miscarriage of justice exception to various procedural defaults and time limitations that would, in the absence of an exception, bar federal court review of claims of actual innocence. As the Supreme Court noted in *McQuiggan*:

> We have applied the miscarriage of justice exception to overcome various procedural defaults. These include "successive" petitions asserting previously rejected claims*, see Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality opinion), "abusive" petitions asserting in a second petition claims that could have been raised in a first petition, see *McCleskey v. Zant,* 499 U.S. 467, 494–495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), failure to develop facts in state court, see *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 11–12, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and *failure to observe state procedural rules, including filing deadlines,* see *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); [*Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)]. *Carrier,* 477 U.S., at 495–496, 106 S.Ct. 2639.

*McQuiggan*, 133 S.Ct. at 1931-32 (emphasis added). *See also* Rule 60(b) Motion (ECF No. 23) at 14 ("Even prior to *Perkins*, the miscarriage of justice exception gave the instant court equitable authority when evidence of actual innocence is reliably shown. The U.S. Supreme Court has long held that 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in absence of a showing of cause for procedural default.'" (citing *Murray v. Carrier, inter alia*)).

Applying the above reasoning to AEDPA's statute of limitations was not groundbreaking. To the contrary, *McQuiggan* built upon the foundation already well established for federal habeas review which "applied the miscarriage of justice exception to overcome various procedural defaults." Petitioner asserted that exception throughout these proceedings, from his Habeas Petition, his Objections to the Report and Recommendation, his Application for a COA, and in his petition for rehearing by the Court of Appeals for the Third Circuit. This Court and the Court of Appeals found no basis for equitable tolling and, in fact, the Court of Appeals explicitly stated that "[d]espite his arguments to the contrary, [Mr. Graves] has not shown that he is entitled to equitable tolling of the limitations period of 28 U.S.C. § 2244(d)(1)." Order dated July 1, 2011, at Case Number 11-1408. Doc. 003110582271 (citing, *inter alia, Holland v. Florida*, 560 U.S. 631, 645 (2010) ("We have not decided whether AEDPA's statutory limitations period may be tolled for equitable reasons. . . . Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases.")).

Thus, this Court and the Court of Appeals have already considered petitioner's assertion of an actual innocence/ fundamental miscarriage of justice exception to his procedural default and untimeliness, and rejected the argument. *McQuiggan* makes it quite clear that AEDPA'a statute of limitations itself is subject to such exception, but does not add any elements to the equation.

Petitioner's lack of diligence in bringing his claims of actual innocence to the attention of federal courts is also a major factor militating against a finding that extraordinary circumstances warrant relief under Rule 60(b)(6). The *McQuiggan* Court rejected the State of Michigan's argument "that habeas petitioners who assert convincing actual-innocence claims must prove diligence to cross a federal court's threshold," but nevertheless held that "the Sixth Circuit erred

to the extent that it eliminated timing *as a factor* relevant in evaluating the reliability of a petitioner's proof of innocence. To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggan*, 133 S.Ct. at 1928 (emphasis added) (citing *Schlup*, 513 U.S., at 327). "Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing. . . . [and the] "court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." *McQuiggan*, 133 S.Ct. at 1928 (citing *Schlup*, 513 U.S. at 332, and *House*, 547 U.S., at 537).

Summarizing, the Supreme Court stated that its "opinion clarifies that a federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *McQuiggan*, 133 S.Ct. at 1928. Unjustifiable delay on Mr. Graves' part is not an absolute barrier to relief, but it is a substantial factor that this Court considers in its determination of whether actual innocence has been reliably shown and to weigh in its extraordinary circumstances, Rule 60(b) analysis.

Mr. Graves was convicted in 1983, and his post-trial motions were filed that year. At that time, Mr. Graves already knew of and had the evidence/ proof which he submitted with his Habeas Petition which shows his convictions were "were obtained by the use of false/perjured testimony by Commonwealth professional witnesses, the introduction of illegally obtained evidence and the fabrication of physical evidence by the Commonwealth . . . ," Habeas Petition (ECF No. 3) at 15, which he believes demonstrates his actual innocence. Yet Mr. Graves did not

bring this evidence/ proof to the federal courts until July 2010, 27 years later, and more than 13 years after AEDPA's statute of limitations had expired.

Further, the Court of Appeals instructed district courts reviewing habeas petitioners' Rule 60(b)(6) motions to "consider whether the conviction and initial federal habeas proceeding were only recently completed or ended years ago," and added that considerations of "repose and finality become stronger the longer a decision has been settled." *Cox*, 2014 WL 3865836, *10. Mr. Graves did not file the pending Rule 60(b) Motion until June 10, 2014, some three and one half years after this Court entered judgment against him, and more than one year since *McQuiggan* was decided.

Under all of the circumstances, therefore, this Court finds that petitioner has failed to set forth "extraordinary circumstances" justifying relief pursuant to Rule 60(b)(6).

Where a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473 (2000). Jurists of reason would not find it debatable  that Graves has failed to set forth an "extraordinary circumstance" justifying relief pursuant to Rule 60(b)(6). Accordingly,  a certificate of appealability should be denied.

### III.    Conclusion

For the reasons stated above, it is respectfully recommended that petitioner Graves' Rule 60(b) Motion (ECF No. 23) be denied, and that a certificate of appealability also should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14)

days from the filing of this Report and Recommendation to file Objections. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>s/ Cynthia Reed Eddy</u>
CYNTHIA REED EDDY
UNITED STATES MAGISTRATE JUDGE

cc:
BENNIE D. GRAVES
DW-2957
SCI Albion
10745 Route 8
Albion, PA 17475

All Counsel of Record